**CASE NO. 25-2020**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

LUKE MYERS,                                              )
                                                        )
      Plaintiff-Appellee,                              )
                                                        )
v.                                                      )
                                                        )
PAPA TEXAS, LLC, *et al.*                               )
                                                        )
      Defendant-Appellant.                             )

---

On Appeal from the United States District Court
For the District of New Mexico
The Honorable District Judge David H. Urias
D. C. No. 2:23-cv-01096-DHU-JHR

---

**APPELLANT PAPA TEXAS, LLC'S CORRECTED OPENING BRIEF**

ADAMS+CROW LAW FIRM

*/s/ Samantha M. Adams*
Samantha M. Adams
Mareike K. Bandy
5051 Journal Center Blvd NE, Suite 320
Albuquerque, New Mexico 97109
Telephone: 505-582-2819
sam@adamscrow.com
mareike@adamscrow.com
*Attorneys for Appellant Papa Texas, LLC*

ORAL ARGUMENT *IS* REQUESTED
July 2, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................iii

GLOSSARY ............................................................................................................ v

PRIOR OR RELATED APPEALS ........................................................................ 1

STATEMENT OF JURISDICTION ...................................................................... 1

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE AND FACTS ....................................................... 2

   A.   The Old 249 Case, its Related Arbitration, and Settlement Discussions ................ 2

   B.   The New 1096 Case ........................................................................................ 4

SUMMARY OF THE ARGUMENT ..................................................................... 7

ARGUMENT ........................................................................................................... 8

   A.   The District Court Erred In Lifting The Stay And Finding That Papa Texas Was In Default Within The Meaning Of 9 U.S.C. § 3. ............................................................. 8

      I.   In Its Order Compelling Arbitration, the District Court Specifically Ordered the Parties to Arbitrate under the Arbitration Agreement and that Order Pertained to a New Case with New Claims. ...................................................................................... 9

      II.   Whether a Default Occurred was Already Part of the Court's Waiver Analysis When It Ordered the New 1096 Case to Arbitration ................................................... 12

      III.   Myers and the District Court Were Wrong in Concluding That Pre-Paid is Dispositive of the Finding of Default. ....................................................................... 13

      IV.   The District Court Found No Waiver Under the Peterson Factors, and Analysis of Default under 9 U.S.C. § 3 Should Lead to the Same Result. .............................. 17

         a)   The law of the case dictates that Papa Texas did not default when failing to pay the arbitration fee in the old case. ................................................................... 17

         b)   To the extent that this Court determines that the concepts of waiver and default are different, It should reverse the District Court's conclusion that there was a default after determining there had not been a waiver. ............................... 19

      V.   The District Court's Analysis of Default was Too Narrow. ............................... 22

         a)   There was no factual default by the AAA ...................................................... 22

    b)   When the AAA refuses to arbitrate cases with a certain party, it uses clear language.............................................................................................................23

B.  The District Court Erred When It Allowed Myers To Defy The District Court's Order To Arbitrate. .......................................................................................................24

   I.   In its Order Compelling Arbitration, the District Court Specifically Ordered the Parties to Arbitrate Under the Original Agreement.....................................................24

    a)   The original agreement does not allow Myers to refuse consent to arbitrate. 25

    b)   The District Court erred when allowing Myers to refuse consent based on a rule for which Papa Texas had no notice................................................................26

   II.   Myers Waived any Default and Breach Arguments and Should not Have Been Allowed a Second Bite at the Apple After Losing on Waiver....................................27

CONCLUSION ......................................................................................................................28

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ............................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ...........................30

CERTIFICATE OF PRIVACY REDACTIONS..................................................................31

CERTIFICATE OF EXACT COPIES ..................................................................................32

CERTIFICATE OF SERVICE...............................................................................................33

ATTACHMENT ......................................................................................................................34


Attachment 1: Order Granting Motion to Vacate Stay filed 2/13/25 ........... Vol II, 331

Attachment 2: Order Denying Motion for Sanctions filed 2/13/25............... Vol II, 333

Attachment 3: Transcript of Proceedings Motions Hearing filed 3/4/25 ..... Vol II, 391

# TABLE OF AUTHORITIES

## Cases

Bedgood v. Wyndham Vacation Resorts, Inc., 88 F.4th 1355 (11th Cir. 2023). 9, 19, 20, 24

Burnett v. Nat'l Ass'n of Realtors, 615 F. Supp. 3d 948 (W.D. Mo. 2022)......................28

Burnett v. Nat'l Ass'n of Realtors, 75 F.4th 975 (8th Cir. 2023)........................................28

Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc., 567 F.3d 1191 (10th Cir. 2009..............................................................................................................................8

Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342 (4th Cir. 2009)...........................8

Freeman v. SmartPay Leasing, LLC, 771 Fed. Appx. 926 (11th Cir. 2019) ....................18

Garcia v. Mason Contract Prods. LLC, 2010 U.S.Dist. LEXIS 92869 (S.D. Fla. Aug. 18, 2010) ...........................................................................................................14, 15, 17, 21

Harris v. City Cycle Sales, Inc., 112 F.4th 1272 (10th Cir. 2024)....................................19

Hartbarger v. Frank Paxton Co., 1993-NMSC-029, 115 N.M. 665, 857 P.2d 776...........26

Hill v. Ricoh Americas Corp, 603 F.3d 766, 773 (10th Cir. 2010)....................................19

Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968) ............................................................18

In re Checking Account Overdraft Litigation, 856 Fed. Appx. 238 (11th 2021) ..............26

Iraq Middle Mkt. Dev. Found. v. Harmoosh, 947 F.3d 234 (4th Cir. 2020)......................18

Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309 (11th Cir. 2002))....................9, 20, 21

JPay, Inc. v. Kobel, 904 F.3d 923 (11th Cir. 2018)............................................................26

Kontrick v. Ryan, 540 U.S. 443 (2004) ..............................................................................19

Marie v. Allied Home Mortgage Corp., 402 F.3d 1 (1st Cir. 2005) ..................................18

Merrit Island Woodwerx, LLC v. Space Coast Credit Union, 137 F.4th 1268 (11th Cir. 2025) .......................................................................................................................19, 20

Morewitz v. West of Engl. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356 (11th Cir.1995) ...................................................................................................................20, 21

Morgan v. Sundance Inc., 596 US 411 ................................................................20, 21, 27

Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200 (4th Cir. 2004) ...........................................................................................................................................18

Pepper v. United States, 562 U.S. 476 (2011))..................................................................19

Peterson v. Shearson/American Exp., Inc., 849 F.2d 464 (10th Cir. 1988)...........17-20, 22

Pre-Paid Legal Services, Inc. v. Cahill, 786 F.3d 1287 (10th Cir. 2015) .7, 8, 13-18, 22, 29

Rapaport v. Soffer, 2011 WL 1827147, (D.Nev May 12, 2011)........................................13

Ronan v. Neighborhood Rest. Partners of Florida, LLC, 2019 WL 13267169, (M.D. Fla. Nov. 29, 2019).............................................................................................................21

Sink v. Aden Enters., 352 F.3d 1197, 1199 (9th Cir.2003) ..........................7, 8, 16, 22, 23

Sitzer v. Nat'l Ass'n of Realtors, 12 F.4th 853 (8th Cir. 2021) .........................................28

<u>State Farm Mut. Auto. Ins. Co. v. Petsch</u>, 261 F.2d 331 (10th Cir. 1958)........................ 28

<u>Strong v. Davidson</u>, 734 Fed. Appx. 578 (10th Cir. 2018)........................................... 26, 29

<u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976, 982 (10th Cir. 2002) ................ 22

<u>Wallrich v. Samsung Electronics America, Inc.</u>, 106 F.4th 609 (7th Cir. 2024)................ 26

<u>Yates v. American Republics Corporation</u>, 163 F.2d 178 (10th Cir. 1947) ...................... 28

## Statutes

28 U.S.C. § 1331 ................................................................................................................ 1

28 U.S.C. § 1367 (a) .......................................................................................................... 1

9 U.S.C § 16(a)(1)(A), (B) ................................................................................................ 1

9 U.S.C. § 3 ...............................................................1, 7, 8, 14, 15, 17, 19-21, 23, 28, 29

9 U.S.C. §§ 2, 4 ................................................................................................................ 15

9 U.S.C. § 2 ...................................................................................................................... 15

9 U.S.C. § 4 ...................................................................................................................... 15

## Other Authorities

3 Fed. Proc., L. Ed. §4:32 ................................................................................................ 18

Black's Law Dictionary (12th ed. 2024)........................................................................... 27

## Rules

AAA Commercial Rules R-7(a)) ....................................................................................... 26

AAA R-14(a) (2016) ......................................................................................................... 26

Rule 57, Rule 58 or R-1(a) ............................................................................................... 26

# GLOSSARY

| | |
|---|---|
| **AAA** | American Arbitration Association |
| **Arbitration Agreement** | January 9, 2023 Arbitration Agreement (App. at 098-104) |
| **Myers** | Luke Myers, Plaintiff-Appellee |
| **New "1096" Case** | Case Number 2:23-cv-01096-DHU-JHR |
| **Old "249" Case** | Case Number 2:23-cv-00429-DLM-JHR |
| **Papa Texas** | Papa Texas, LLC, Defendant-Appellant |
| **The Parties** | Luke Myers, Plaintiff-Appellee and Papa Texas, LLC, Defendant-Appellant |
| ***this* case** | Case Number 2:23-cv-01096-DHU-JHR |

## PRIOR OR RELATED APPEALS

There are no prior or related appeals with regard to the case at bar.

## STATEMENT OF JURISDICTION

The United States District Court for the District of New Mexico had jurisdiction to determine the applicability of the arbitration agreement between the parties under 9 U.S.C. § 3. Further, the District Court's jurisdiction was based on 28 U.S.C. § 1331 regarding Plaintiff-Appellee's Fair Labor Standards Act claim, and on 28 U.S.C. § 1367 (a) regarding Plaintiff-Appellee's remaining claims.

This Court's jurisdiction derives from 9 U.S.C § 16(a)(1)(A), (B).

## STATEMENT OF THE ISSUES

- **Whether the District Court Erred in Lifting the Stay and Finding that Papa Texas was in Default within the Meaning of 9 U.S.C. § 3.**
  - o In Its Order compelling arbitration, the District Court specifically ordered the Parties to arbitrate under the Arbitration Agreement, and that Order pertained to a *new* Case with *new* claims.
  - o Whether a default occurred was already part of the District Court's waiver analysis when It ordered the New 1096 Case to arbitration.
  - o Myers and the District Court were wrong in concluding that <u>Pre-Paid</u> is dispositive of the finding of default.
  - o The District Court found no waiver under the <u>Peterson</u> factors, and analysis of default under 9 U.S.C. § 3 should lead to the same result.
  - o The District Court's analysis of default was too narrow.
- **Whether the District Court Erred When It Allowed Myers to Defy the District Court's Order to Arbitrate.**
  - o In Its Order compelling arbitration, the District Court specifically ordered the parties to arbitrate under the original agreement.
  - o Myers waived any default and breach arguments and should not have been allowed a second bite at the apple after losing on waiver.

1

## STATEMENT OF THE CASE AND FACTS

In 2023, Papa Texas, LLC ("Papa Texas") and its former employee, Luke Myers, agreed to arbitrate the employment-related wage claims at issue in the New "1096" Case. The District Court improperly allowed Myers to thwart this arbitration agreement by finding Papa Texas defaulted on the agreement by not paying an arbitration fee related to a previously-filed lawsuit. Papa Texas, therefore, appeals two orders entered by the District Court, both related to the arbitration agreement, and both effectively denying its enforcement. Order Granting Motion to Vacate Stay, entered on February 13, 2025, (App. at 331-332); Order Denying Motion for Sanctions, denying Papa Texas, LLC's Motion against Plaintiff to Enforce Arbitration Order, for Sanctions Against Plaintiff and for an Order to Show Cause why Plaintiff Should not be Held in Contempt, entered on February 13, 2025, (App. at 333-334). The Parties executed their agreement to arbitrate on January 9, 2023. 2023 Arbitration Agreement (App. at 098-104 the "Arbitration Agreement").[1] The Arbitration Agreement contains a stand-alone arbitration requirement, a stand-alone clause stating AAA and its rules will be used, and a stand-alone "severability" clause saying that any clause found to be unenforceable (such as using AAA to arbitrate) will not affect enforceability of the remainder of the Arbitration Agreement. Id.

## A.     The Old 249 Case, its Related Arbitration, and Settlement Discussions

Myers filed a first federal lawsuit on May 18, 2023, Case No. 2:23-cv-00429-DLM-

---

[1] Mr. Myers was previously hired by Papa Texas in 2021, at which time an arbitration agreement was executed as well. 2021 Arbitration Agreement (App. at 091-097).

JHR, (App. at 435-458 (the "Old 249 Case")), and in response, Papa Texas moved to dismiss and compel arbitration on July 20, 2023. (App. at 036-090). Only days later, on August 2, 2023, Myers conceded to pursue his individual claims (apparently letting go of the class claims that are now at issue *in this case*), offered to file a joint stipulated order of dismissal of the entire case (including the class claims that were never submitted to arbitration), and initiated settlement discussions of the individual claims. (App. at 055). On August 3, 2023, the parties thus jointly dismissed Myers's first lawsuit in order to arbitrate his Old 249 Case ***individual*** claims. (App. at 037, 152). At that same time, the Parties agreed to negotiate those claims for 21 days before commencing the arbitration process. (App. at 037, 053)

While the parties were still negotiating, Myers demanded arbitration, after which the AAA requested payment of the respective filing fees by October 9, 2023, (App. at 183-184). Myers paid his portion on September 12, 2023. (App. at 139). All the while, the Parties discussed settlement from August to October. (App. 075-086). On October 9, 2023, Papa Texas informed AAA that the parties were attempting to settle and requested an extension of time to October 23, 2023, to pay the employer's portion of the filing fee. (App. at 186). On October 10, 2023, the AAA gave Papa Texas an extension to pay the arbitration filing fee until October 24, 2023. (App. at 186). On October 20, 2023, the Parties believed they had reached a settlement when Myers's Counsel said, "I'm pleased to report that Mr. Myers has decided to accept your client's offer."  (App. at 144). Sincerely and reasonably believing the matter had been resolved, Papa Texas did not pay its portion of the AAA filing

fee as Papa Texas believed there was nothing left to arbitrate. (App. at 345).  Neither Party informed AAA that the matter had been settled.

A letter from AAA on October 25, 2023 says AAA would further extend the payment deadline until November 1, 2023, and without payment, AAA would close the file. (App. at 188-190). This letter did not warn that a closure would be with prejudice and the matter could not be reopened without all parties' consent. (App. at 189-190). In fact, there is no written rule published by the AAA warning participants that once the AAA closes a file, it will not be reopened without all parties' consent. Instead, the AAA rules indicate that ***the AAA might refuse*** to conduct ***future arbitrations*** but do not instruct that administrative closures are with prejudice as to *that* matter or *those parties*. (App. at 142).

About three weeks after settlement, on November 9, 2023, AAA administratively closed the file in that matter for Papa Texas's failure to comply with its employment arbitration rules and its employment due process protocol. AAA also told Papa Texas that AAA "***may*** decline to administer any ***future*** employment matter involving respondent." (App. at 194 (emphasis added)). Following this letter, the Record is devoid of any attempt by Myers to seek or obtain an Order of Default from AAA against Papa Texas, which makes sense because, at that time, both parties believed they had a settlement. (App. at 144).

## B.    The New 1096 Case

It was not until almost a full month after the AAA closed its file – and well after the deadline for Papa Texas to pay the arbitration fee had passed – that, on December 5, 2023, Myers claimed there was no settlement agreement. (App. at 173, 345-346). Oddly, rather

than reopening his Old 249 Case, Myers **decided** to file a new lawsuit. Case Number 2:23-cv-01096-DHU-JHR, December 8, 2023 (the "New 1096 Case"). While mostly the same as the old case, the New 1096 Case was different as to a critical fact (payment of wages) and as to requested relief. (App. at 011-032 the "Class and Collective Action Complaint"). Critically, Myers recanted his admission from the Old 249 Case that he was paid minimum wage, (App. at 441), to now claiming he was "ostensibly" paid minimum wages, (App. at 017).

Papa Texas filed a Motion to Dismiss and Enforce Settlement Agreement in the New 1096 Case, seeking an order to arbitrate and a stay according to 9 U.S.C. §§ 3, 4. (App. at 036).[2] Myers opposed and said Papa Texas had supposedly "waived" its right to arbitrate (1) by failing to pay the AAA fee, (2) by invoking the machinery of litigation, and (3) by not moving to enforce the settlement agreement in arbitration itself. At the hearing, Myers's counsel told the District Court that there is a "listed" rule that AAA will not reopen an arbitration absent a new arbitration agreement "that hadn't been waived." (App. at 362-363). But that is not true: there is no such written rule "listed" in the AAA rules. Moreover, Myers admitted that the AAA's supposed rule arises when there is a "waiver" of an arbitration agreement which the District Court subsequently found did not exist in *this* case. Id. It bears emphasis that, at the first hearing in *this* case, the District Court made clear that *this* case is a new case, a different case and that there had been no arbitration compelled in *this* case. (App. at 359-360).

---

[2] Even though the styling of this Motion is about enforcing the settlement, the opening paragraph seeks an order compelling arbitration in the alternative. (App. at 036).

After analyzing the totality of the circumstances in depth, the District Court held that Papa Texas had not waived its right to arbitrate. (App. at 241). There, the District Court found Papa Texas had not acted inconsistently with its right to arbitrate and had not substantially invoked the machinery of litigation (or done anything else to waive its right to arbitrate). (App. at 238-241). Even though Myers conceded to arbitrate with Papa Texas in the Old 249 Case, (App. at 055), the District Court also made a credibility determination in *this* case that Papa Texas had not paid the earlier arbitration fee or believed it was necessary to begin arbitration only because Papa Texas "truly believed" that "a final settlement was imminent." (App. at 238-239).

Apparently satisfied that Papa Texas could enforce the arbitration agreement, the District Court ordered the parties "to submit *this matter* to the AAA…." "…pursuant to the arbitration agreement between the parties." (App. at 246). Oddly, Myers's Counsel took the initiative to send the District Court's Order compelling arbitration to AAA but then immediately said Myers would not consent to reopen. (App. at 252). AAA nonetheless opened the matter with a *new* case number. (App. at 257). Papa Texas immediately paid the arbitration fee. (App. at 283-284). Only upon Myers's repeated insistence that he refused to participate did AAA close the file. (App. at 267-272).

Myers then moved the District Court to lift the stay while Papa Texas filed a corresponding motion seeking to compel Myers to adhere to the District Court's Order and the Arbitration Agreement. (App. at 248-284). In the ensuing briefing, Myers re-argued the same factual issue of Papa Texas not paying the filing fee, but this time claimed the non-payment was a "default" instead of a "waiver." Myers also again referenced the alleged but

non-existent "listed" rule that AAA only reopens matters when both parties consent: Myers did not *cite or provide a copy of any such "listed" rule*. (App. at 299). Papa Texas disputed that Myers could refuse consent under the Court's Order and pointed out that Myers had never actually submitted the *new* matter to the AAA. (App. at 325-327).

The Court heard argument on the competing Motions (to stay/enforce the order) on March 4, 2025, during which the District Court twice referenced the briefing on Papa Texas's previous motion to compel arbitration *in this case* and its resulting Order. (App. at 405, 411). On March 4, 2025, the District Court said It would not issue a written order due to a concern about equitable tolling. (App. at 430). Citing Pre-Paid Legal Services, Inc. v. Cahill, Sink v. Aden Enterprises, Inc., and Florida district court cases, the District Court ruled from the Bench and found Papa Texas in default and breach of the Arbitration Agreement for not paying the fee for arbitration of the earlier case. (App. at 428-431).

## SUMMARY OF THE ARGUMENT

This Court should reverse the District Court and reinstate the stay under 9 U.S.C. § 3 because the District Court erred when It determined that a default and/or breach occurred, (App. at 428-431), and that such supposed default prevented the District Court from forcing Plaintiff-Appellee Myers ("Myers") to consent to AAA arbitration for this *new* 1096 Case. Myers cannot refuse to arbitrate the New 1096 Case because it is a *new* case with *new* claims based on a *new* complaint, for which no default in arbitration can have been found. Where the District Court already analyzed the totality of the circumstances and determined that Papa Texas not having paid the fee for the old arbitration was reasonable because, at

the time, the parties believed that they had settled the case, such finding should have led to the same conclusion as earlier in the case: "no waiver" and "no default."

Even if this Court finds differently, the District Court ordered the Parties to submit *this* case to arbitration under their Arbitration Agreement, which does not allow Myers to refuse consent *under any circumstances*. There is no "listed" AAA special rule allowing Myers to refuse consent under the Court's Order that could have been incorporated into the Arbitration Agreement and, thus, the Court erred in allowing Myers to refuse.

## ARGUMENT

The Tenth Circuit reviews *de novo* "the district court's decision to deny a stay pending arbitration." See Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc., 567 F.3d 1191, 1196 (10th Cir.2009 (internal citation omitted). In reviewing a district court's decision as to default, the Tenth Circuit will "defer to the district court's underlying factual findings" and reverse only for clear error. See Pre-Paid Legal Services, Inc. v. Cahill, 786 F.3d 1287, 1293 (10th Cir. 2015 (citing Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342 (4th Cir. 2009); see also Sink v. Aden Enters., 352 F.3d 1197, 1199 (9th Cir.2003)).

## A.    The District Court Erred In Lifting The Stay And Finding That Papa Texas Was In Default Within The Meaning Of 9 U.S.C. § 3.

First and foremost, the District Court erred by finding that any default by Papa Texas for not paying a fee for an arbitration arising from and related to the Old 249 Case nullifies the Arbitration Agreement forever where the claims in *this* New 1096 Case have not been sent to AAA; and Myers's previous arbitration request to AAA was for Myers's *individual*

8

claims stated in the Old 249 Case. Second, where the District Court previously determined that Papa Texas did not waive its right to arbitrate, (App. at 246), and where waiver and default involve overlapping analyses, the District Court erred by not enforcing law of the case but, instead, finding a default for non-payment of a fee for an old arbitration. Third, the District Court's analysis and definition of 'default' was too narrow and discounted the totality of the circumstances. See Bedgood v. Wyndham Vacation Resorts, Inc., 88 F.4th 1355, 1369 (11th Cir. 2023) (citing Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315–16 (11th Cir. 2002)).

**I.     In Its Order Compelling Arbitration, the District Court Specifically Ordered the Parties to Arbitrate under the Arbitration Agreement and that Order Pertained to a New Case with New Claims.**

As Papa Texas explained to the District Court in the briefing on the motions to compel arbitration and to lift the stay, the District Court should have ordered Myers to arbitrate under the parties' Arbitration Agreement regardless of whether the case was considered an opening or a reopening of arbitration. (App. at 325-327).[3] Given the District Court's position that the case at bar is a *new* case (separate from the case giving rise to the original demand for AAA arbitration), this case obviously pertains to *new* claims at issue, which as Papa Texas told the Court, have not actually been submitted to the AAA. (App.

---

[3] After the District Court ordered the parties to submit *this case* to AAA, Myers initiated contact with the AAA and led the AAA to believe that the District Court had ordered the AAA to "reinitiate" an old arbitration. (App. at 258-59). Myers also supposedly summarized the procedural history of "the matter" but strategically failed to tell the AAA that his earlier demand for arbitration arose from an entirely different lawsuit. Id.

at 325-327). The claims in **this case** are different, even if only to a minor degree, from the claims stated in a different complaint in an earlier lawsuit.

The District Court's decision to lift the stay was surprising because It had already explained Its position on "the old case v. the new case" when It ordered the parties to arbitrate *this case*. At the hearing before issuing the Order, the District Court explained:

> Here's the bigger problem, I think, for both parties in some way, and that is that all of this took place in a different case. So on the one hand, to say – to enforce a settlement agreement, for instance, the Defendant is asking me to enforce the settlement agreement. That settlement agreement may very well be part of something else, not the case that's in front of us, because **this case, the one that's assigned to me, the 1096 case, that was not the case where the settlement agreement or the settlement discussions took place. Nor was it the case where the arbitration or at least the initiation of the demand that you filed occurred**.
> .        .        .        .        .
> At the same time, that would mean for you that the waiver issue, whether or not the Defendant waived the arbitration, that also was in a different case. So what we are looking at is a fresh case now, new case, 1096, and the only issue that I would need to decide right now, we don't have a settlement agreement, there's never -- as far as I know, with this particular case, and this was your decision to file this new case, we haven't had any settlement discussions. **We haven't had an attempt to arbitrate. So why would it not be the case that I would be compelled under the arbitration agreement to compel this to arbitration at this time?**

(App. at 359-360 (emphasis added)). During the argument, the District Court disagreed with Myers's claim that the *new* case is not really *new* and said, **"It's not the same case…I do think it's a new case."** (App. at 361 (emphasis added)).

The District Court reiterated this very point in the order compelling arbitration that it "…was unclear whether the AAA will decline to accept the arbitration **in this case**…the parties will submit **this matter** to arbitration pursuant to the Arbitration Agreement between the parties." (App. at 246 (emphasis added)). The District Court's decision in Its recent

order discounts Its earlier determination that **this is a new case** by implying that an earlier default or breach of an arbitration agreement pertaining to a different case and different claims nullifies that same arbitration agreement forever and ever. This cannot be true and also appears to "undo" the District Court's earlier determination that Papa Texas had not waived its right to arbitrate at all (much less forever and ever).

There can be no genuine dispute that the District Court's order compelling arbitration encompasses *new* claims in a *new* case that are *newly* subject to the parties' arbitration agreement, and the District Court should have ordered Myers to provide whatever consent the AAA required. Though Myers said this case is really just the old case, the District Court is right this is a *new* case. One significant difference from the old to the new is that, in the *old* complaint, Myers admitted he was paid minimum wage minus the tip credit but, in the *new* complaint, he added the word "ostensibly" in front of the word "paid," so whether minimum wage was paid is *now* a disputed fact when it was not so before, and such issue will now have to be litigated before the court or AAA. Compare the complaint in the First 249 Case, (App. at 441), with the complaint in the New 1096 Case, (App. at 017) (using the word "ostensibly")).

Thus, the District Court erred in determining that It could not "force" Myers to comply with the Arbitration Agreement (whether to newly open or supposedly "reopen" a AAA arbitration) because the District Court's order to arbitrate with AAA was an order to arbitrate all of the claims **in this case** (with a new complaint). In Its recent order lifting the stay, however, the District Court seemed to backtrack and agree that an arbitration demand arising from the old case nullified *this* Court's power **in this case**. How could the District

11

Court be characterized as forcing Myers to make a separate, new agreement to arbitrate when Its order to arbitrate in the *new* case pertains to a different complaint and different claims? As shown above, the District Court told the parties that *this case* is a *new case* different from the old case, and the order to arbitrate was for the claims stated in *this case*. That was not done, and the District Court incorrectly allowed Myers to refuse consent.

## II.     Whether a Default Occurred was Already Part of the Court's Waiver Analysis When It Ordered the New 1096 Case to Arbitration.

The District Court should have enforced the original Arbitration Agreement because, on January 18, 2024, Papa Texas asked the court to either enforce the settlement agreement or ***compel arbitration under 9 U.S.C. §§ 3 and 4*** (App. at 309), and on September 19, 2024, the District Court compelled the parties to arbitrate presumably under that same law. (App. at 246). The problem with the new order, then, is that the Court already analyzed the bulk of 9 U.S.C. §§ 3 and 4 that pertain to default. That is, those sections instruct the Court to analyze whether the party moving to compel arbitration is in default. Indeed, under Section 4, the Court is directed "to hear the parties and, upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue," the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." On September 19, 2024, the District Court did just that. It ordered the Parties to "submit this matter to arbitration pursuant to the Arbitration Agreement between the parties" only after the District Court "heard the parties" and apparently determined that any "failure to comply" by Papa Texas for not paying the arbitration fee (whether in this case or an earlier case) was not "an issue." (App. at 426).

To conclude that the District Court did not consider whether Papa Texas was in legal default when the District Court conducted Its "waiver" analysis and then compelled arbitration is untenable and illogical.

### III. Myers and the District Court Were Wrong in Concluding That <u>Pre-Paid</u> is Dispositive of the Finding of Default.

<u>Pre-Paid</u> does not compel this Circuit Court to affirm the District Court. The District Court erred in finding that <u>Pre-Paid</u> says a default occurs *whenever* a party to arbitration does not pay an arbitration fee, even if the alleged failure to pay happened in a different case. The procedural posture of the Parties' litigation and Papa Texas's conduct and rationale at issue *in this case* is very different than that of the litigants in <u>Pre-Paid</u> and the cases cited therein. Yet, the District Court made an erroneous legal decision to find a legal "default" after Myers led the court to believe the Tenth Circuit had already disposed of the same facts at issue in *this* case through its <u>Pre-Paid</u> analysis. (App. at 313 <u>citing</u> <u>Pre-Paid Legal Services v. Cahill</u>, 786 F.3d 1287, 1298 (10th Cir 2015)). But the Parties' earlier demand for arbitration arising from a separate case does not have the same context as that in <u>Pre-Paid</u>. Indeed, one of the cases <u>Pre-Paid</u> cites in its analysis on "default" makes this precise point: the failure by a party to pay fees in arbitration will prevent that party from successfully moving to compel arbitration *in the same case in the future*. <u>See</u> <u>Pre-Paid</u>, 786 F.3d, at 1295, citing <u>Rapaport v. Soffer</u>, 2011 WL 1827147, *2 (D.Nev May 12, 2011) ("the Ninth Circuit has consistently found that the failure by a party to pay fees in arbitration will prevent that party from successfully moving to compel arbitration in the same case in the future.").

Here, the supposed failure to pay occurred before this case was even filed and, therefore, the District Court had the power to force Myers to consent to arbitration in *this* case in accord with the parties' Arbitration Agreement – an agreement that pertained to the old case that had been settled and dismissed *and* to the new case with different claims and disputes. Moreover, neither <u>Pre-Paid</u> nor any of its cited cases were considering a litigant's decision to not pay an arbitration fee specifically because the lawsuit giving rise to the arbitration had not only been settled but had also been voluntarily dismissed by the plaintiff! Instead, in <u>Pre-Paid</u> and its cited cases, the courts all appeared to consider the party's failure to pay the filing fee *de facto* unjustifiable whereas in the case at bar, the District Court found the opposite.

In each of the cases upon which Myers relied and persuaded the District Court to embrace, there appears to have had been no previous, *separate* lawsuit giving rise to the earlier demand for arbitration, and the <u>Garcia</u> case upon which Myers heavily relied in briefing is a perfect example of why this Circuit Court should reverse the District Court and order *this new case* to arbitration. (App. at 313 <u>citing</u> <u>Garcia v. Mason Contract Prods.</u> <u>LLC</u>, 2010 U.S.Dist. LEXIS 92869 (S.D. Fla. Aug. 18, 2010)). As an initial matter, in <u>Garcia</u>, the court reopened the original lawsuit from which arbitration had been compelled. <u>Id</u>. Yet, Myers says <u>Garcia</u> and <u>Pre-Paid</u> stand for the conclusions that: an administrative closure of arbitration for a failure to pay *always* constitutes a factual default with the arbitral forum; a factual default with the arbitral forum *always* constitutes a legal default under 9 U.S.C. § 3; and any previous default by a party under 9 U.S.C. § 3 means that particular party can *never* again arbitrate claims under that agreement. The District Court,

based on this argument, erroneously found a default in the *old* case, and concluded that this meant that the agreement could not be enforced in a *new* case with different claims. (App. at 405). But the questions of "always" and "never" were not before the Pre-Paid and Garcia courts. As Papa Texas explained to the District Court in its briefing, *this case* has not even been submitted to the AAA. (App. at 325-326). And the claims are different now (App. at 017 (adding the word "ostensibly"); App. at 031 (seeking to classify the case as a "collective action" and seeking expenses and fees to-date (which are vastly higher and different from the expenses and fees sought in the *old* case)).

Whether a failure to pay can *ever* be justified was not the issue in Pre-Paid nor would this Circuit Court have likely reached that conclusion even if it had considered the point. The Federal Arbitration Act, as stated in 9 U.S.C. § 2, directs courts to consider "such grounds as exist in law or in equity" for the revocation of any contract, and 9 U.S.C. § 4 further directs the court to compel arbitration once it is satisfied that any failure to comply with an Arbitration Agreement is "not an issue" precluding arbitration. See 9 U.S.C. §§ 2 and 4. This language reflects a legislative intent that courts consider the context of claims and defenses, theories and arguments. "Never" and "always" are not part of the FAA.

The District Court's ruling based on Pre-Paid does not reflect the facts and issues in the case *sub judice*. The Pre-Paid Court identified two overarching questions under 9 U.S.C.§ 3: whether the arbitration had "been had in accordance with the agreement" and whether the party seeking to lift the stay was "in default in proceeding with such arbitration." Pre-Paid, 786 F.3d at 1293-98. As described above, here the arbitration of *this case* has not "been had" in accordance with the Agreement because the claims here have

not actually been submitted to AAA at all. But, even if this Court were to disagree, then this Court should nonetheless reverse the District Court's finding that the Arbitration Agreement was "breached" or that Papa Texas was in default by not paying the AAA fee (and thus the arbitration "had been had"). Unlike in <u>Pre-Paid</u> and its cited cases, the District Court's finding that Papa Texas's failure to pay was justified should also lead to the conclusion that there was no breach of contract or legal default. As suggested below in the <u>Sink</u> analysis, an apparent breach of contract or default *can be excused* and, in this case, the District Court's decision on "waiver" did just that.

Additionally, the language of the Arbitration Agreement in this case is different than that in <u>Pre-Paid</u> and, thus, leads to a different result. In <u>Pre-Paid</u>, the language compelling arbitration was found in the very same (long) sentence as the instruction to use the AAA rules. <u>See</u> 786 F.3d, at 1288. In our language, there are several pages dedicated to arbitration including a giant clause where it says that the parties ***must*** arbitrate and ***cannot*** bring a class action, and the clause with instructions about selecting AAA as an arbitrator is *separate* from the section categorically requiring arbitration. (App. at 133, 135) Moreover, there is a severability clause, providing that, if one provision of the agreement is found to be unenforceable, the remaining agreement shall stay in effect. (App. at 102). So, if AAA cannot be used, which Papa Texas disputes, then the requirement to use AAA is severed from the Agreement.

Finally, <u>Pre-Paid's</u> determination of legal default under 9 U.S.C. § 3 was deeply rooted in factual conduct *not at issue in this case* where the Tenth Circuit determined that employee-Cahill's reckless conduct in <u>Pre-Paid</u> had undermined the purpose of arbitration

as a "cost-effective and efficient means of resolving a dispute." See Pre-Paid, 786 F.3d, at 1299 n. 7. Specifically, this Court found Cahill defaulted under 9 U.S.C. § 3 by failing to pay the filing fee, failing to show he was unable to pay the fee, failing to ask the AAA to modify the payment schedule, and failing to seek an order requiring his opponent to pay his share. See Pre-Paid, 786 F.3d, at 1294. The Court then cited the Garcia case to suggest that because Cahill's conduct was intentional/reckless, there was no other way to describe his conduct than as a "default." Id. Finally, this Court explained that Cahill "thwarted" the arbitration process by demanding arbitration, seeking a stay, failing to pay the arbitration fee, and then demanding arbitration again. See, 786 F.3d, at 1299 n. 7.

The facts in this case do not support the same legal finding of "default" under 9 U.S.C. § 3. Papa Texas was not the party who demanded arbitration with AAA in the old case, (App. at 109); Papa Texas's conduct does not mirror Cahill's, Papa Texas did not thwart the arbitration process because, as the District Court found during its "waiver" analysis, Papa Texas's non-payment of the arbitration fee was justified because Papa Texas genuinely believed the parties had reached a settlement; and because Myers also believed there was a settlement, the Parties had already dismissed plaintiff's lawsuit. There was no thwarting of the arbitration process *where neither party wanted arbitration at that time*.

### IV.     The District Court Found No Waiver Under the Peterson Factors, and Analysis of Default under 9 U.S.C. § 3 Should Lead to the Same Result.

> *a)      The law of the case dictates that Papa Texas did not default when failing to pay the arbitration fee in the old case.*

The District Court further erred in determining that default and waiver are analyzed

differently when copious case law and a leading treatise on federal procedure instruct that waiver and default *in this context* are the same. See, e.g., Freeman v. SmartPay Leasing, LLC, 771 Fed. Appx. 926, 932 (11th Cir. 2019); see also, Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 13 (1st Cir. 2005), Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004), 3 Fed. Proc., L. Ed. §4:32 ("A stay of proceedings where the issue is referable to arbitration requires that the issue be referable under an agreement in writing for arbitration and that the applicant for the stay not be in default in proceeding with arbitration, or, stated another way, that the applicant has not waived the right to arbitration." Id.).

The Tenth Circuit analyzes "waiver" under Peterson v. Shearson/American Exp., Inc., and while no similar clear framework for default exists, the cases in fact do look at those same factors. 849 F.2d 464, 465–66 (10th Cir. 1988); see, e.g., Pre-Paid Legal Services, Inc. v. Cahill, 786 F.3d 1287, 1294 (10th Cir. 2015) (considering why a party did not pay the arbitration fee); see also Iraq Middle Mkt. Dev. Found. v. Harmoosh, 947 F.3d 234, 238 (4th Cir. 2020) (whether a party defaulted by invoking the machinery of litigation); Hilti, Inc. v. Oldach, 392 F.2d 368, 370–71 (1st Cir. 1968) (analyzing delay as to default).

Below, it was a contradiction for the District Court to first find that, under the comprehensive Peterson framework, Papa Texas had not waived its right to arbitrate but then, under similar factors to analyze default, find the exact opposite. The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." See Harris v. City Cycle

Sales, Inc., 112 F.4th 1272, 1278 (10th Cir. 2024) (citing Pepper v. United States, 562 U.S. 476, 506 (2011)). For the doctrine to apply, "[t]he resolution of the issue need not be explicit." Id. By deciding the analytical elements for both waiver and, implicitly, default, the District Court should be bound by Its earlier determination.

> b)    To the extent that this Court determines that the concepts of waiver and default are different, It should reverse the District Court's conclusion that there _was_ a default after determining there _had not been_ a waiver.

Even when courts distinguish between the concepts of default and waiver, they still analyze default "under the totality of the circumstances," and analyze whether "the party has acted inconsistently with the arbitration right." See, e.g. Bedgood v. Wyndham Vacation Resorts, Inc., 88 F.4th 1355, 1369 (11th Cir. 2023)). Eleventh Circuit rulings are instructive here because the District Court relied on lower court cases from Florida to determine that a default occurred.[4]

In the Eleventh Circuit's recent Merritt Island case, default under 9 U.S.C. § 3 is based on one of the very same elements of analysis for waiver in the Tenth Circuit. Compare Merrit Island Woodwerx, LLC v. Space Coast Credit Union, 137 F.4th 1268, 1274 n.1 (11th Cir. 2025) (analyzing the "totality of the circumstances" to determine if a "default" has occurred by a party "acting inconsistently with the arbitration right" Id. citing

---

[4] Merritt Island, in which the Eleventh Circuit borrowed the concept of waiver from criminal law,instructs that waiver only occurs "intentionally." See 137 F.4th 1268, 1274 n.1 (11th Cir. 2025) (citing Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004)). It is instructive that the Tenth Circuit's "waiver" analysis under Peterson does not require intention, presumably because 9 U.S.C. § 3 does not define "default" under an intentional conduct, negligence or strict liability standard. See Hill v. Ricoh Americas Corp, 603 F.3d 766, 773 (10th Cir. 2010); see Peterson, 849 F.2d, at 465–66.

Bedgood, supra) with Peterson, 849 F.2d, at 467-468 (analyzing if a waiver has occurred by a party acting inconsistently with the arbitration right). In *this* case, the District Court already found that, under a totality of the circumstances analysis, Papa Texas did not act inconsistently with its right to arbitrate by failing to pay the fee because the decision not to pay was based upon a credible belief that the claims articulated (in the Old 249 Case) had been settled. (App. at 238-239). Even assuming that "default" might include other conduct than waiver, the District Court did not identify any other facts to support a default finding aside from Papa Texas having not paid the fee for the old arbitration. (App. at 428-431).

There are two further points to note about the Eleventh Circuit that bear on the District Court's analysis because the District Court found the Florida district court cases persuasive in considering "default." First, the Eleventh Circuit has long-standing precedent stating, under 9 U.S.C. § 3, "…the term 'default' carries the same meaning as 'waiver.'" Ivax Corp. v. B. Braun of America Inc., 286 F.3d 1309, 1315, fn. 17(11th Cir. 2002) (abrogated in part on other grounds by Morgan v. Sundance Inc., 596 US 411, 419) citing Morewitz v. West of Engl. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1365–66 n. 16 (11th Cir.1995)).[5] If the District Court found the Florida district courts persuasive as to its "default" finding, then the applicable appellate precedent in Florida finding "default" and "waiver" coterminous should have led the District Court's earlier finding of "no waiver" to a decision of "no default."

---

[5] But see Merrit Island in which the Eleventh Circuit did not acknowledge the long-standing comparator of "default" to "waiver," but it does not appear that Merritt overruled Bedgood or Ivax.

The second point is a concern arising from the District Court's reliance on non-published Florida district court cases because those cases appear to run afoul of the U.S. Supreme Court's ruling that courts cannot invent "special rules" in favor of *or against* arbitration. See Morgan v. Sundance, Inc., 596 US 411, 419; compare (App. at 430 (District Court agreeing to a special rule that legal default can arise from Myers refusal to give AAA consent). In both Ronan and Garcia, the courts essentially determined that they could not force the plaintiff to comply with the contract because the employer had already breached, constituting a repudiation. See Garcia v. Mason Contract Products, LLC, 2010 WL 3259922, at *3 (S.D. Fla. Aug. 18, 2010); see also, Ronan v. Neighborhood Rest. Partners of Florida, LLC, 2019 WL 13267169, at *2 (M.D. Fla. Nov. 29, 2019). But in this case, the District Court *extensively* examined the totality of the circumstances and concluded that Papa Texas' failure to follow the rules by paying the fee in the Old 249 Case, i.e. apparently breaching the contract earlier in history, was excusable. (App. at 238-239). The District Court in this case then agreed to apply a special rule imposed by the Florida courts that they cannot force an employee to re-consent. But here the District Court already determined that this is a *new* case and, therefore, how could the Court requiring Myers to follow Its order to arbitrate be forcing Myers to "re-consent" to an arbitration of claims in a *new* case? This appears to be a special rule *against* arbitration because of some earlier supposed default – a special rule that contravenes Morgan.

If this Court likewise relies on cases from Florida, it makes sense to consider the Eleventh Circuit's guidance 1) from the Ivax Corp. and Morewitz cases that under 9 U.S.C. § 3 the term default carries the same meaning as waiver, or 2) if default and waiver are

21

different, then the default analysis was already conducted and disposed of by the District Court under the Tenth Circuit's "waiver" analysis under the <u>Peterson</u> framework.

Finally, when the District Court relied on unpublished Florida district court cases instead of copious circuit court cases for the definition of default and waiver, the District Court erred in finding that Myers had met his burden of persuasion in his request to lift the stay. See <u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976, 982 (10th Cir. 2002), as amended on denial of reh'g (Jan. 23, 2003) (holding that the "moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial").

## V.    The District Court's Analysis of Default was Too Narrow.

### a)    *There was no factual default by the AAA.*

The Ninth Circuit's <u>Sink</u> case, which formed the basis of the District Court's error, (App. at 428), is distinguishable from the case at bar in a fundamental and dispositive way. Relying on <u>Sink</u>, the Tenth Circuit's <u>Pre-Paid</u> analysis clearly instructs that the legal default in <u>Sink</u> was not solely based on the factual finding of default by the AAA in that case, but instead on an unreasonable and unjustifiable failure to pay the arbitration fee. See <u>Pre-Paid Legal Services, Inc. v. Cahill</u>, 786 F.3d 1287, 1296 (10th Cir. 2015) <u>citing</u> <u>Sink v. Aden Enters.</u>, 352 F.3d 1197, 1199 (9th Cir.2003) and stating that the <u>Sink</u> court "also relied on the record, which showed the defendants had received multiple notices to pay, did not report inability to pay, and had not made genuine efforts to make alternative arrangements". In the case at bar, before the District Court could even get to the <u>Sink</u> analysis, it had

already found that the failure to pay the arbitration fee was based on a reasonable and justifiable non-payment of the arbitration fee. (App. at 238-239).

To the contrary, when Sink analyzed whether the Court could compel the parties to return to arbitrate, it had already apparently concluded that non-payment of the arbitration fee was inexcusable. See 352 F.3d, at 1198-1199. But here, the Court analyzed the totality of the circumstances surrounding the non-payment of the arbitration fee and specifically ordered the parties to go to arbitration pursuant to the original agreement. (App. at 246). The District Court seems to have read Sink to state that a finding of factual default by the AAA *alone* suffices to find a legal default under 9 U.S.C. § 3. Even if that were the case, which it simply could not be as the AAA does not have judicial authority or responsibility to interpret the legal meaning of the word "default" in 9 U.S.C. § 3, it is NOT the case here that the AAA found a default. To the contrary, the AAA agreed to reopen the arbitration so long as it was clear that the parties had an enforceable arbitration agreement. That is the case here. The District Court already determined that the Arbitration Agreement is enforceable. (App. at 241). No new consent was needed, simply the same consent originally required.

      *b)*    *When the AAA refuses to arbitrate cases with a certain party, it uses clear language.*

There simply can be no default under 9 U.S.C. § 3 when, as here, the AAA does not actually refuse to arbitrate with a party. If the AAA intends to entirely foreclose an arbitration, it uses clear language. The Eleventh Circuit's Bedgood case provides a clear example of just this in which the AAA stated it:

"would 'decline to administer this claim and any other claims between [Resorts] and its consumers at this time.,' [but that if the defaulting party] 'advise[d] the AAA in the future of its intention to comply with the AAA's Consumer Arbitration Rules ... the AAA may consider at its sole discretion, accepting newly filed consumer cases going forward.'"

See _Bedgood v. Wyndham Vacation Resorts, Inc._, 88 F.4th 1355, 1361 (11th Cir. 2023). The clear _Bedgood_ language is considerably different from the facts in this case. Here, AAA never stated it _**would**_ decline to administer this claim or any other claims. (App. at 194). And, in fact, it did not decline to do so. Instead, Myers told AAA he didn't consent. (App. at 252). Because the AAA allowed the option to arbitrate, the "default" of an old arbitration is distinguishable from a "default" leading to AAA unilaterally refusing to ever arbitrate for a particular party again.

**B.    The District Court Erred When It Allowed Myers To Defy The District Court's Order To Arbitrate.**

At its core, the District Court's erroneous decision to lift the stay allowed Myers to breach the Arbitration Agreement by giving Myers the power to refuse consent to arbitrate the _new_ claims in the _new_ case under the binding Arbitration Agreement.

**I.    In its Order Compelling Arbitration, the District Court Specifically Ordered the Parties to Arbitrate Under the Original Agreement.**

Even if this Court finds that the arbitration was not submitted to the AAA pursuant to _new_ claims, Myers still should not have been permitted to refuse to consent to arbitration.

24

       *a)*     *The original agreement does not allow Myers to refuse consent to arbitrate.*

The District Court erred by adopting Myers's untenable position that forcing him to consent to arbitrate this case is akin to also forcing Myers to consent to a *new* Arbitration Agreement. (App. at 362-363). But the District Court sent the case back to arbitration based on the parties' *original* Arbitration Agreement in a *new* case after analyzing whether the *original* agreement was enforceable. (App. at 246). The District Court rejected Myers's argument that the old agreement was null and void. Id. Since the original agreement was still enforceable, Myers did not have the right to refuse consent to arbitrate. While it might be true that the AAA had the right to refuse to reopen the matter, it did not. It reopened. The only obligation that Papa Texas violated was its obligation to pay the AAA fee as to an old arbitration demand for claims in a different case that, at the time Papa Texas did not pay, both Parties reasonably believed they had settled. (App. at 239).

The Arbitration Agreement could not be more clear: "covered claims shall be exclusively resolved by binding arbitration" with both parties "waiving all rights … with regard to trial." (App. at 043). The Arbitration Agreement does not distinguish between opening and re-opening an arbitration. The Arbitration Agreement does not give Myers the right to refuse arbitration at any point in time. He claims the right to refuse consent to re-open the arbitration because, allegedly, the need for such renewed consent is an unpublished AAA rule to which the parties also consented in their Arbitration Agreement – but that is patently not true – there is no such rule. (App. at 323-324). The Arbitration

Agreement does not state such a rule and, even so, reopening the matter would be proper because the new arbitration would have encompassed the *new* claims from the *new* case.

> **b)** *The District Court erred when allowing Myers to refuse consent based on a rule for which Papa Texas had no notice.*

Courts analyzing AAA rules typically cite those rules rather than just accepting one party's interpretation of an unwritten rule. <u>See</u>, <u>e.g.</u>, <u>Wallrich v. Samsung Electronics America, Inc.</u>, 106 F.4th 609, 613 (7th Cir. 2024) (interpreting AAA Rule MC-10(d)); <u>see also</u> <u>In re Checking Account Overdraft Litigation</u>, 856 Fed. Appx. 238 (11th 2021)(citing AAA Commercial Rules R-7(a)); <u>Strong v. Davidson</u>, 734 Fed. Appx. 578, 582 (10th Cir. 2018) (relying on Rule 57, Rule 58 or R-1(a)); <u>JPay, Inc. v. Kobel</u>, 904 F.3d 923 (11th Cir. 2018) (citing AAA R-14(a) (2016)).

But here, Myers instructed the District Court that there is a AAA rule "listed" somewhere instructing that once a matter is administratively closed, it will not be reopened without consent or without a new arbitration agreement. (App. at 362-363). This is not true. The record is devoid of any such rule because Myers cannot point to one.

Whether the supposed consent rule is listed/published or not is critical in this case. If there is no published rule that Myers is allowed to veto "reopening" arbitration, then there is no way that such a rule could have been part of the original Arbitration Agreement between Myers and Papa Texas. A contract requires mutual assent between the parties. <u>See</u> <u>Hartbarger v. Frank Paxton Co.</u>, 1993-NMSC-029, ¶ 7, 115 N.M. 665, 669, 857 P.2d 776, 780 (internal citation omitted). There can be no mutual assent regarding a rule of which Papa Texas had no knowledge. Likewise, the only AAA rules capable of being incorporated

in the contract are the written, published rules, of which both parties can take notice – such is not the case here.

Allowing Myers to refuse consent on the basis of an unlisted, unwritten rule amounted to the District Court inventing a special rule about arbitration between two parties when one supposedly defaulted in an arbitration arising from a previous case. As described above, the Supreme Court says that "courts are not to create arbitration-specific procedural rules." See Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022). This "policy is to make arbitration agreements as enforceable as other contracts, but not more so." Id., at 418. The "rule" that Myers could refuse consent to arbitrate this new case was not made part of the Arbitration Agreement, and the District Court erred when inserting it into the contract.

## II.     Myers Waived any Default and Breach Arguments and Should not Have Been Allowed a Second Bite at the Apple After Losing on Waiver.

For the reasons stated above, Myers either already argued "default" under the name "waiver" or he waived his right to do so because the Court previously found the Arbitration Agreement enforceable so long as the AAA would take the case. At the beginning of this case, Papa Texas moved to compel arbitration under 9 U.S.C. §§ 3 and 4, both of which address default. 9 U.S.C. §§ 3 and 4. Myers's choice to only argue waiver, (App. at 117-129), appears to have been strategic to try and set up the "default" argument later but, in fact, Myers used default terminology and case law to oppose the original motion in his "waiver" argument. A look at Black's Law definition of default as "the failure to pay a debt when due" is helpful. DEFAULT, Black's Law Dictionary (12th ed. 2024). In his response

to Papa Texas first motion to compel arbitration, Myers stated that Papa Texas had an obligation to pay the filing fee and failed to do so. (App. at 121-122). Then, Myers relied on Burnett and Sitzer when arguing waiver, (App. at 123), but both of those cases analyzed "waiver" in relation to "default." See Burnett v. Nat'l Ass'n of Realtors, 615 F. Supp. 3d 948, 955 (W.D. Mo. 2022), aff'd, Burnett v. Nat'l Ass'n of Realtors, 75 F.4th 975 (8th Cir. 2023) (citing Sitzer v. Nat'l Ass'n of Realtors, 12 F.4th 853, 855 (8th Cir. 2021).

Myers even admits in his briefing on "default," that he could have argued a default defense, but that he did not raise it because he felt confident on his waiver argument. (App. at 399). Where "[t]he constituent elements of waiver are an existing right, knowledge of that right, and an intention to relinquish or surrender it," Myers *intentionally* relinquished his right to argue default to free himself of the arbitration agreement. See State Farm Mut. Auto. Ins. Co. v. Petsch, 261 F.2d 331, 334 (10th Cir. 1958) (citing Yates v. American Republics Corporation, 163 F.2d 178, 179 (10th Cir. 1947). The District Court erred when allowing him a second bite at the apple. Finally, it is critical to note that, when the District Court expressed uncertainty whether AAA would arbitrate *this* case, the question was not whether AAA would defer to Myers's supposed veto power but, instead, was whether AAA would refuse to work with Papa Texas again. AAA has not refused to work with Papa Texas again and Myers should have been forced to consent.

## CONCLUSION

WHEREFORE, for the foregoing reasons, this Court should reverse the District Court and reinstate the stay under 9 U.S.C. § 3 because the District Court erred when it determined that a default or breach had occurred in this *new* case, (App. at 428-431), and

that such default supposedly prevented the District Court from forcing Plaintiff-Appellee Myers ("Myers") to consent to arbitration with the AAA.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

Undersigned counsel believes oral argument may be helpful to the Court because there is a circuit split on various issues, amongst other things on whether the word "waiver" is coterminous with the legal definition of default under 9 U.S.C. § 3, and counsel's arguments may assist the Court in determining these disputes. Further, the Tenth Circuit's conclusion in Pre-Paid Legal Services, Inc. v. Cahill and Strong v. Davidson in combination with the District Court's ruling in this case implies that a failure to pay an arbitration fee is always a legal default that would prevent the parties from relying on their arbitration agreement for time-immemorial, a significant conclusion regarding which counsel's argument may further assist the Court.

ADAMS+CROW LAW FIRM

By: /s/ Samantha M. Adams
Samantha M. Adams
Mareike K. Bandy
*Attorneys for Appellant Papa Texas, LLC*
5051 Journal Center Blvd NE, Suite 320
Albuquerque, New Mexico 97109
Telephone: 505-582-2819
sam@adamscrow.com
mareike@adamscrow.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(2)(A) and 10th Cir. R. 28.2(C)(1) & (C)(2), the word limit of Fed. R. App. P. 32(a)(7)(A) & (B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f)  document contains 8,663 words as determined by the word counting feature of Microsoft Word 2016.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman size 14 font.

July 2, 2025                    ADAMS+CROW LAW FIRM

                              By: */s/ Samantha M. Adams*
                              Samantha M. Adams
                              Mareike K. Bandy
                              5051 Journal Center Blvd. NE, Suite 320
                              Albuquerque, New Mexico 87109
                              Phone: (505) 582-2819
                              Fax: (505) 212-0439
                              Sam@adamscrow.com
                              Mareike@adamscrow.com
                              *Attorneys for Papa Texas, LLC*

## CERTIFICATE OF PRIVACY REDACTIONS

Pursuant to 10th Circuit Rule 25.5, I hereby certify that APPELLANT'S OPENING

BRIEF complies with the privacy and redaction requirements of Fed. R. App. P. 25(a)(5).

July 2, 2025                              ADAMS+CROW LAW FIRM


By: */s/ Samantha M. Adams*
Samantha M. Adams
Mareike K. Bandy
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, New Mexico 87109
Phone: (505) 582-2819
Fax: (505) 212-0439
Sam@adamscrow.com
Mareike@adamscrow.com
*Attorneys for Papa Texas, LLC*

**CERTIFICATE OF EXACT COPIES**

I hereby certify that the hard copies of APPELLANT'S OPENING BRIEF which

were submitted to the Court are exact copies of the APPELLANT'S OPENING BRIEF

which was electronically filed on July 2, 2025.

July 2, 2025                    ADAMS+CROW LAW FIRM

By: */s/ Samantha M. Adams*
Samantha M. Adams
Mareike K. Bandy
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, New Mexico 87109
Phone: (505) 582-2819
Fax: (505) 212-0439
Sam@adamscrow.com
Mareike@adamscrow.com
*Attorneys for Papa Texas, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: */s/ Samantha M. Adams*
Samantha M. Adams

**ATTACHMENT**