**No. 25-2020**

## In the United States Court of Appeals
## for the Tenth Circuit
_____

PAPA TEXAS, LLC, ET AL.
*Defendants-Appellant,*

v.

LUKE MYERS, on behalf of himself and all others similarly situated,
*Plaintiff-Appellee,*

On Appeal from the United States District Court
for the District of New Mexico
Civil Case No. 2:23-cv-01096-DHU-JMR (The Hon. David H. Urias)

## RESPONSE BRIEF OF PLAINTIFF-APPELLEE
## ORAL ARGUMENT IS NOT REQUESTED

ANDY BILLER
BILLER & KIMBLE LLC
4200 Regent Street
Columbus, OH 43219
(614) 604-8759
*abiller@billerkimble.com*

ANDREW KIMBLE
LAURA FARMWALD
EMILY HUBBARD
BILLER & KIMBLE LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
(513) 202-0710
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for the Plaintiffs-Appellee*

August 18, 2025

# TABLE OF CONTENTS

Table of Authorities.................................................................................................. ii

Statement Regarding Related Appeals ............................................................... iv

Introduction............................................................................................................. 1

Statement of the issues ........................................................................................ 2

Statement of the Case .......................................................................................... 3

Procedural History................................................................................................. 4

Legal Background.................................................................................................. 8

Standard of Review............................................................................................... 10

Argument ................................................................................................................ 11

1.   This Court Resolved the Issue Presented over a decade ago in *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015) ........................................ 11

2.   The District Court Correctly Vacated the Stay Because Papa Texas's Material Breach Rendered Arbitration Unavailable........................................... 15

    2.1.   Papa Texas Materially Breached the Arbitration Agreement.............15

    2.2.   Papa Texas Cannot Enforce the Arbitration Agreement After Materially Breaching it........................................................................16

    2.3.   Arbitration is Unavailable due to Papa Texas's Material Breach. ......17

3.   Papa Texas Waived the "Old vs. New" Case Argument, and it Fails on the Merits........................................................................................................................ 19

4.   Myers Did Not Waive His Default Argument...................................................... 23

Conclusion .............................................................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Albuquerque Pub. Sch. Bd. of Educ. v. Armstrong*, No. 22-2012, 2022 U.S. App. LEXIS 34153 (10th Cir. Dec. 12, 2022) ............................................................. 24

*BOSCA, Inc. v. Bd. of Cty. Comm'rs*, 853 F.3d 1165 (10th Cir. 2017) .................... 8

*Brandifino v. CryptoMetrics, Inc.*, 27 Misc. 3d 513, 896 N.Y.S.2d 623 (N.Y. Sup. Ct. 2010) ........................................................................................................ 22

*Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) ................................... 14, 18

*Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, ¶ 17, 126 N.M. 69, 966 P.2d 777 ............................................................................................ 15

*Forrester v. Penn Lyons Homes, Inc.*, 553 F.3d 340 (4th Cir. 2009) .......................... 10

*Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 U.S. Dist. LEXIS 92869 (S.D. Fla. Aug. 18, 2010) (unpublished) ........................................... 18, 21

*Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186 (10th Cir. 2021) ............................. 24

*Hernandez v. Acosta Tractors, Inc.*, 898 F.3d 1301 (11th Cir. 2018) ...................... 23

*In re Rumsey Land Co.*, LLC, 944 F.3d 1259 (10th Cir. 2019) .............................. 24

*In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554 (2d Cir. 1995) ....... 17

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) ................................................ 15, 16

*Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464 (10th Cir. 1988) ....... 7, 26

*Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015)... 2, 3, 9, 11, 12, 14, 16, 17, 18, 21, 22, 23, 26 28

*Richison v. Ernest Grp., Inc.*, 634 F.3d 1123 (10th Cir. 2011) .................... 20, 24, 25

*Roach v. BM Motoring, LLC*, 228 N.J. 163, 155 A3D 985 (2017) .......................... 19

*Ronan v. Neighborhood Rest. Partners of Fla., LLC*, No. 6:19-cv-1130-Orl-37LRH, 2019 U.S. Dist. LEXIS 249323 (M.D. Fla. Nov. 29, 2019) ........................ 17, 18

*Sink v. Aden Enters.*, 352 F.3d 1197 (9th Cir. 2003) ........................................ 10, 19

**Statutes**

9 U.S.C. § 2 *et seq.* ............................................................................................  18

9 U.S.C. § 3 ............................................................... 2-3, 8-13, 17, 23, 28

**Other Authorities**

AAA Employment Arbitration Rule 47 .............................................................. 6, 9

**GLOSSARY**

AAA ....................................................................American Arbitration Association

FAA..........................................................................................Federal Arbitration Act

**STATEMENT REGARDING RELATED APPEALS**

Pursuant to 10th Cir. R. 28.2(C)(3) Appellee represents that there are no prior or related appeals.

## INTRODUCTION

The district court correctly vacated the stay of proceedings (App. Vol. II at 37-38, 134-137) because Defendant-Appellant Papa Texas, LLC and Guillermo Perales (collectively "Papa Texas") materially breached the arbitration agreement by repeatedly failing to pay required fees despite multiple requests and warnings, leading to the administrative closure of the arbitration on November 9, 2023. (App. Vol. I at 197). The American Arbitration Association ("AAA"), per its Employment Arbitration Rules incorporated into the agreement, closed the case "[b]ecause the employer [] failed to comply with the Employment Arbitration Rules and the Employment Due Process Protocol" and, thereafter, required mutual consent to reopen. (App. Vol. I at 258-259). Put another way, AAA allows, but does not require, a party to absolve another party of its breach.

Plaintiff-Appellee Luke Myers ("Myers") was not obligated to absolve Papa Texas of its material breach of the arbitration agreement and declined to do so. Papa Texas's last-ditch attempt to pay its fee on October 1, 2024—nearly a year after it was due and five days after AAA's confirmation that it would not administer the case without Myers's consent—did not cure the default and the matter remains closed (App. Vol. I at  258-259, 282-286). Myers followed the district court's Order to determine whether AAA would administer the case (App. Vol. I at 255), and AAA's

1

refusal to proceed absent Myers's consent (App. Vol. I at 258-259) rendered arbitration unavailable, satisfying 9 U.S.C. § 3's conditions for lifting the stay.

Papa Texas's plethora of arguments—that the "new" 1096 case negates the default (which is not properly before this Court), that the district court's earlier non-waiver finding precludes default, that *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), *cert denied, Cahill v. Pre-Paid Legal Servs.*, 577 U.S. 940 (2015) ("*Cahill*") is distinguishable, that the default analysis was too narrow, that the AAA did not refuse to arbitrate, and that Myers improperly refused consent— are meritless. These claims mischaracterize the agreement, AAA rules, and the court's authority under the Federal Arbitration Act (FAA). The district court's rulings should be affirmed.

### STATEMENT OF THE ISSUES

1.    Did the district court correctly vacate the stay of proceedings under 9 U.S.C. § 3 (App. Vol. II at 37) when it found that Papa Texas materially breached the arbitration agreement by failing to pay AAA fees, leading to the arbitration's closure on November 9, 2023 (App. Vol. I at 197), and that AAA's refusal to reopen without Myers's consent (App. Vol. I at 258-259) rendered arbitration unavailable?

2.    Did the district court properly find that Papa Texas cannot enforce an arbitration agreement after materially breaching that agreement, and that the claims asserted in the 1096 case properly fall under that agreement?

3.    Did the district court properly find that Myers did not waive his right to assert that there was a default under the Federal Arbitration Act where he raised it through a motion that was fully briefed?

**STATEMENT OF THE CASE**

Papa Texas asks this Court to absolve it from the consequences of materially breaching the parties' arbitration agreement. In doing so, Papa Texas asks the Court to overturn not only the district court's factual findings, but also its legal conclusions and reliance on this Court's well-reasoned decision in *Cahill*, 786 F.3d 1287. Contrary to Papa Texas's meritless arguments, the facts of the case, and necessary outcome pursuant to the Federal Arbitration Act, are clear. Papa Texas's refusal to pay the arbitration fees in accordance with the rules they selected led to the termination of the arbitral proceeding and resulted in a default under 9 U.S.C. §3. (App. Vol. I at 197, 258-259). The district court's factual findings are not clearly erroneous and its legal conclusions align with both the Federal Arbitration Act and this Court's binding precedent. Myers asks the Court to affirm the district court's ruling.

## PROCEDURAL HISTORY

On January 9, 2023, Myers began working for Papa Texas and was required to sign an arbitration agreement requiring disputes to be resolved under AAA's Employment Arbitration Rules (App. Vol. I at 097, 104). On May 18, 2023, Myers filed a class and collective action lawsuit (Case No. 2:23-cv-00429, "429 Case") (App. Vol. II at 141-164) but agreed to dismiss the case and proceed in arbitration upon receiving a copy of the arbitration agreement he was required to sign as a condition of employment. (App. Vol. I at 56-57). The parties explored the pre-arbitration settlement negotiations, but Papa Texas did not respond to Myers' settlement communications within the parties' agreed-upon tolling period. (App. Vol. I at 83-86). Myers filed a demand for arbitration with AAA on September 12, 2023 (App. Vol. I at 142, 151-152)[1].

AAA informed Papa Texas in writing that Myers had met his obligations under the agreement on September 25, 2023, and provided a deadline to pay its share of the filing fees (App. Vol. I at 186-187). In its letter, AAA reminded Papa Texas of its obligations under the Rules of the forum:

**Under the Costs of Arbitration Section of the Employment/Workplace Arbitration Rules, the 'employer's full share is due as soon as the employee meets his or her filing**

---

[1] Myers initially filed his Demand for Arbitration with Judicial Workplace Arbitrations in accordance with the arbitration agreement, but was not able to proceed in that forum because he did not work in Texas. (App. 140).

**requirements, even if the matter settles or is withdrawn'. This notice confirms that employee's filing requirements have been met.**

(App. Vol. I at 186-187) (emphasis in original). Despite this unambiguous reminder of those rules Papa Texas chose for dispute resolution, Papa Texas did not pay its fees on October 9, 2023. Instead, Papa Texas requested a two-week extension of time to pay, which AAA granted, extending the deadline to pay the employer's filing fees to October 24, 2023 (App. Vol. I at 189). AAA again informed Papa Texas that "absent receipt by that date, we'll close our file." (App. Vol. I at 189).

Papa Texas did not remit payment on October 24, 2023, communicate an inability to pay, or request an extension of time to pay (App. Vol. I at 191-194). Instead, Papa Texas simply ignored the communications from AAA and shirked its obligation to pay (App. Vol. I at 191-194). Despite this violation of the rules, AAA provided an unrequested extension of time to pay and again advised Papa Texas that the file would be closed absent receipt by November 1, 2023 (App. Vol. I at 191-194). Once again, Papa Texas did not pay its filing fee by November 1, 2023, communicate an inability to pay, or request an extension of time to pay (App. Vol. I at 197). Instead, Papa Texas again ignored the communications from AAA and shirked its obligation to pay (App. Vol. I at 197).

On November 9, 2023, AAA informed the parties that Papa Texas failed to submit the previously requested filing fee and administratively closed the file. (App.

Vol. I at 197). Papa Texas was on notice of this possibility, being warned of this outcome through AAA's explicit warnings and the Employment Arbitration Rules. *See* AAA Employment Arbitration Rule 47.[2] In AAA's notice of administrative closure, AAA informed the parties that "[b]ecause the employer has failed to comply with the Employment Arbitration Rules and the Employment Due Process Protocol, [AAA] may decline to administer any future employment matter involving the Respondent" and asked Papa Texas to remove AAA's name from its arbitration agreements so there is no confusion to the public (App. Vol. I at 197).

Although the parties continued efforts to resolve Myers' claims while the arbitration was pending administration, they did not reach an agreement to settle (App. Vol. I at 234-238).

When the parties' settlement discussions failed, Myers refiled his claims, again as a class and collective action (Case No. 2:23-cv-01096, "1096 Case") (App. Vol. II at 141-164). Myers raised the same wage claims he filed previously. (App. Vol. I at 014-036).

Despite acknowledging that the parties did not reach an agreement as to the terms of a settlement, Papa Texas filed a Motion to Dismiss and Enforce Settlement

---

[2] Available at https://www.adr.org/media/sj3jfivl/employmentrules_web_3.pdf (explaining that AAA may suspend or terminate the proceedings if administrative charges are not paid).

Agreement asking the district court to either dismiss the case and enforce a settlement agreement or compel arbitration and stay proceedings (App. Vol. I at 39-54, 179). Myers opposed, arguing that there was no settlement agreement to enforce and that Papa Texas had waived the right to enforce the arbitration agreement. (App. Vol. I at 108-132).

After applying the factors established by the Tenth Circuit in *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464 (10th Cir. 1988), the district court found no waiver of arbitration rights due to Papa Texas's alleged belief in settlement. (App. Vol. I at 240-244). The district court also held that the parties did not reach an agreement to settle and instructed the parties to ascertain whether AAA would agree to administer the arbitration given Papa Texas's failure to comply with its rules. (App. Vol. I at 249).

On September 19, 2024, Myers submitted the matter to AAA but withheld consent to reopen the administratively closed matter. (App. Vol. I at 255). AAA initially assigned the case a new number (App. Vol. I at 274) but declined to administer the case without Myers' consent. (App. Vol. I at 258-259). On September 24, 2024, AAA confirmed that it would not administer the arbitration. (App. Vol. I at 258).

On September 27, 2024, Myers moved to vacate the stay pursuant to 9 U.S.C. § 3 (App. Vol. I at 251-262). Myers argued that Papa Texas had defaulted on the arbitration agreement and, accordingly, AAA would not reopen the case unless Myers consented—*i.e.*, absolve Papa Texas of its prior default—which Myers was unwilling to do. (App. Vol. I at 251-262).

October 1, 2024, Papa Texas attempted to pay its filing fee via overnight check (App. Vol. I 283-287), but AAA had already confirmed it would not proceed without a new consent from Myers (App. Vol. I at 259) and did not accept the late payment.

On October 7, 2024, Papa Texas filed a Motion Against Plaintiff to Enforce Arbitration Order, for Sanctions Against Plaintiff, and for an Order to Show Cause why Plaintiff Should not be Held in Contempt. (App. Vol. I at 263-269). After briefing and oral argument, the district court granted the Motion to Vacate the Stay and denied the Motion for Sanctions. (App. Vol. II at 37-38, 134-137).

## LEGAL BACKGROUND

Section 3 of the Federal Arbitration Act ("FAA") obligates courts to stay litigation on matters the parties have agreed to arbitrate until such arbitration "has been had in accordance with the terms of the agreement," so long as the applicant for the stay "is not in default in proceeding with arbitration." 9 U.S.C. §3; *see also BOSCA, Inc. v. Bd. of Cty. Comm'rs*, 853 F.3d 1165, 1170 (10th Cir. 2017). Where,

as here, a party refuses to pay its share of fees in accordance with the arbitral forum's rules, a district court's refusal to maintain a stay is independently supported by either of these phrases found in 9 U.S.C. § 3. *Cahill*, 786 F. 3d at 1293-1295.

Like the courts, Papa Texas's chosen arbitral forum has rules and requires payment of fees. *See* Initiation Letter (explaining that the dispute would be administered in accordance with the AAA Employment Arbitration Rules and Employment Due Process Protocol, which can be found at www.adr.org) (App. at 186). AAA's rules require payment of the employer's share of the filing fees as soon as AAA confirms in writing that the individual filing met the filing requirements, "even if the matter is settled or withdrawn" (App. Vol. I at 144). AAA explicitly warns its customers that "[w]here AAA determines that a company's failure to pay their portion of arbitration costs is a violation of the Employment Arbitration Rules, the AAA may decline to administer future employment/workplace arbitrations with that company." (App. Vol. I at 144). Without payment, the arbitration panel can terminate the proceedings. (App. Vol. I at 145; App. Vol. II at 29 (quoting AAA Employment/Workplace Arbitration Rule 47).

Where a party's failure to pay fees in accordance with AAA rules results in a termination of the proceedings, that party is not entitled to maintain the stay under § 3. *Cahill*, 786 F.3d at 1294.

"Some courts view a party's failure to pay its share of the arbitration fees as a breach of the arbitration agreement, which precludes any subsequent attempt by that party to enforce that agreement. Other courts have treated the failure to pay arbitration fees as a waiver of the right to arbitrate." *Cahill*, 786 F. 3d at 1295, FN3 (citation omitted). The result of a party's failure to pay their share of arbitration costs leads to the same result under either approach: it precludes that party from seeking arbitration. *Id.*

Thus, where a party breaches the agreement to arbitrate by failing to pay its share of the filing fees, a district court's refusal to maintain a stay under 9 U.S.C. §3 is justified because the arbitration "ha[d] been had in accordance with the terms of the agreement" or because the party was "in default in proceeding with such arbitration." *Cahill*, 786 F.3d at 1299.

## STANDARD OF REVIEW

This Court reviews a district court's decision as to default of arbitration de novo, but defers to the court's underlying factual findings. *Cahill*, 786 F.3d at1293 citing *Forrester v. Penn Lyons Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). Factual findings of a district court are reviewed for clear error. *Id.* citing *Sink v. Aden Enters.*, 352 F.3d 1197, 1199 (9th Cir. 2003).

## ARGUMENT

**1. This Court Resolved the Issue Presented over a decade ago in *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015)**

Papa Texas argues the district court's default analysis was too narrow, arguing that ignoring the totality of circumstances under *Cahill* (App. Br. at 22-23). This misapplies *Cahill* and ignores the record.

In *Cahill*, the Tenth Circuit held that failure to pay AAA fees constitutes a default under 9 U.S.C. § 3 when it causes arbitration's closure, rendering the forum unavailable. *Cahill*, 786 F.3d at 1294. This Court analyzed two phrases in 9 U.S.C. § 3— "[U]ntil such arbitration has been had I accordance with the terms of the agreement" and "[I]n default in proceeding with such arbitration"—and found that each independently supported the district court's order lifting a stay after a party's failure to pay fees led to administrative closure. *Cahill*, 786 F.3d at 1293-95. As the Court explained, the failure to pay arbitration fees caused the arbitration to go "as far as it could" and constituted a "default" under §3. *Id*. The Court also noted that its holding was consistent with decisions of other courts that have determined that a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce the agreement. *Id*. at 1294 (citing cases).

Here, the district court properly applied *Cahill* to nearly identical facts to find that Papa Texas was not entitled to maintain a stay under § 3. The district court found that Papa Texas's repeated refusal to pay its share of the arbitration fees despite repeated warnings violated the AAA's rules, which require payment regardless of whether the case later settles (App. Vol. I at 186-187, Vol. II at 134-137). As a result of Papa Texas's non-compliance with the rules, AAA's closure and refusal to administer the claims without Myers's consent, the arbitral forum was no longer available and the stay was no longer required under the FAA. (App. Vol. I at 258-259). This finding is not clearly erroneous. *Cahill*, 786 F.3d at 1293.

Papa Texas overreads *Cahill*'s analysis as requiring a "totality of the circumstances" analysis (App. Br. at 28-29) to argue that that their alleged settlement belief was justifiable (App. Br. at 22-23) and AAA's conditional willingness to reopen (App. Br. at 29) required a broader analysis. *Cahill* does not advance consideration of subjective intent into the default analysis, much less mandate excusing non-payment based on a party's subjective intent. *Cahill*, 786 F.3d at 1293-1295. Instead, *Cahill* instructs that district courts considering whether 9 U.S.C. § 3 requires a stay to consider whether the arbitration has been had in accordance with the terms of the agreement and whether the applicant for the stay is in default. *Cahill*, 786 F.3d at 1293-1295.

Here, the district court acknowledged that AAA required payment of its fees regardless of settlement prospects (App. Vol. II at 111-112, 134-136). The record supports the district court's factual findings that Papa Texas's continuously ignored the warnings from the AAA and failed to pay its fees despite being informed that payment was required regardless of whether the case settled and that, as a result, AAA refused to proceed absent Myers' consent.(App. Vol. I at 186-197, 258; App. Vol. II at 111-112, 134-136). These findings are not clearly erroneous. The district court's legal conclusion that Papa Texas's non-compliance with the rules resulted in a default and that the stay should not remain in place under 9 U.S.C. § 3 as a result, is consistent with this Court's binding precedent.

Even if *Cahill* could be read as requiring consideration of the subjective intent of the parties, the district court did consider the alleged settlement belief, both in its consideration of whether Papa Texas waived arbitration (App. Vol. I at 240) and in considering default. (App. Vol. II at 111-112). The district court concluded that, even if taken as true, such a belief does not negate the default because AAA's rules obligated Papa Texas to pay its fees regardless of whether the case settles (App. Vol. II at 111-112). In other words, because the rules of the forum do not provide exceptions based on subjective intent, Papa Texas's failure to comply with the rules is a material breach and default regardless of Papa Texas's alleged belief in

settlement. *Cahill*, 786 F.3d at 1294; *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1011 (9th Cir. 2005).

Papa Texas's reliance on the district court's finding that it did not intentionally waive arbitration (App. Br. at 17-19) conflates waiver (which may consider a party's intent for analyzing whether it acted inconsistent with the right to arbitration) with default (which considers whether the party is in breach of the contract or violated rules), which the district court correctly distinguished.[3] *Cahill*, 786 F.3d at 1294; App. Vol. II at 110-112). Thus, the district court's earlier ruling that Papa Texas did not intentionally waive arbitration did not foreclose it from finding that Papa Texas was in default after AAA confirmed that the case would remain closed.

As the district court noted, it had not considered whether a default occurred when considering whether a waiver occurred both because the issue was not raised and because AAA's letter closing the case was unclear (App. Vol. II at 110-113). Papa Texas cannot demonstrate that the district court's ruling regarding default after AAA confirmed that the case would not proceed and the issue was properly raised through briefing is erroneous.

---

[3] In plain language, default is whether a party did what a contract required. Intent is irrelevant. For example, a party that wants to comply with a contract but fails to pay anyway is in default. Waiver, however, looks at what a party intends to do, with actions sometimes being evidence of intent.

**2.    The District Court Correctly Vacated the Stay Because Papa Texas's Material Breach Rendered Arbitration Unavailable.**

The district court's ruling should be affirmed because Papa Texas breached the arbitration agreement by failing to pay his fees in accordance with AAA rules. As such, the court's finding that Papa Texas breached the arbitration agreement is not clearly erroneous and its' Order lifting the stay aligns with this Court's binding precedent.

### 2.1.    Papa Texas Materially Breached the Arbitration Agreement

Arbitration is a matter of contract, and a material breach excuses the other party's performance. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). A breach is material if it defeats the contract's purpose. *Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, ¶ 17, 126 N.M. 69, 966 P.2d 777. The agreement dictated that the arbitration would be administered by AAA under its rules (App. Vol. I at 97, 104). AAA's rules required Papa Texas to pay a $2,100 AAA filing fee as soon as the employee met the filing requirements (App. Vol. I at 145). Papa Texas was informed in writing that Myers had met his filing requirements by submitting his demand and paying his fee (App. Vol. I at 186-187). AAA's letter clearly informed Papa Texas that the rules dictate that the employer's full share is due "even if the matter settles or is withdrawn." (App. Vol. I at 186-187).

15

Despite being granted a requested extension, receiving additional AAA written notices and unrequested extensions of time to pay, Papa Texas never paid its fees (App. Vol. I at 189-191). On November 9, 2023, AAA informed the parties that Papa Texas "failed to submit the previously requested filing fee; accordingly, we have administratively closed our file in this matter." (App. Vol. I at 197). AAA's closing letter also informed Papa Texas that AAA may decline to administer any future employment matter involving Papa Texas and asked that AAA's name be removed from Papa Texas's arbitration agreements so there is no confusion to the public." (App. Vol. I at 197).

As numerous courts have held, a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement. *Cahill*, 786 F.3d at 1294 (citing cases). Here, the district court correctly held that Papa Texas's failure to pay its share of arbitration fees was a violation of the agreement.

### 2.2.  Papa Texas Cannot Enforce the Arbitration Agreement After Materially Breaching it.

Papa Texas's material breach precludes enforcement of the arbitration agreement. *Cahill*. A party in breach cannot compel performance of a contract it has undermined. *Morgan*, 596 U.S. at 418. Papa Texas's non-payment (App. Vol. I at 197) breached the agreement's requirement to arbitrate under AAA rules (App. Vol.

I at 97), invalidating its enforceability. *Cahill*, 786 F.3d at 1294. Papa Texas's claim that the court should have forced Myers to consent (App. Br. at 24-25, 32-33) fails, as the FAA does not authorize forcing new assent to absolve a breaching party from their mistake or substituting forums where, as here, the forum was integral to the agreement. (App. Vol. I at 244-249); *Ronan v. Neighborhood Rest. Partners of Fla., LLC*, No. 6:19-cv-1130-Orl-37LRH, 2019 U.S. Dist. LEXIS 249323, at *4 (M.D. Fla. Nov. 29, 2019); *In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554, 561 (2d Cir. 1995).

### 2.3.   Arbitration is Unavailable due to Papa Texas's Material Breach.

Under 9 U.S.C. § 3, a stay is properly lifted if arbitration "has been had" or the applicant is in default. *Cahill*, 786 F.3d at 1294. AAA closed the arbitration for non-payment (App. Vol. I at 197) and refused to reopen without Myers's consent (App. Vol. I at 258-259), meaning arbitration "has been had" as far as possible. Papa Texas's attempt to send its share of the filing fees nearly a year after the final deadline for payment and days after AAA confirmed it would not administer the proceeding was not accepted by AAA and did not cure the default. (App. Vol. I at 258).

Papa Texas complains that the district court failed to force Myers to provide his consent. This argument falls flat, as it ignores that Papa Texas breached the

arbitration agreement by failing to comply with the rules of the forum they chose. As this Court explained in *Cahill*, a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement. *Cahill*, 786 F.3d at 1294 citing *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1011 (9th Cir. 2005).

Once Papa Texas breached the agreement, Myers was alleviated of his obligations under the contract, and nothing in the FAA or arbitration agreement grants a court the authority to compel Myers to absolve Papa Texas of its mistake through consent. 9 U.S.C. § 2 *et seq.*; *See also Ronan*, 2019 U.S. Dist. LEXIS 249323, at *4 ("Plaintiff could consent, could absolve Defendant of its mistake, but neither her Arbitration Agreement with Defendant nor the FAA requires her to do so…Nothing in the FAA grants the Court the authority to compel an individual to consent to something she had not previously consented to, nor does the FAA give the Court the authority to compel a private entity, the AAA, to reopen a case contrary to its own stated rules."); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 U.S. Dist. LEXIS 92869 (S.D. Fla. Aug. 18, 2010) (unpublished) ("Plaintiff could absolve the Defendants of that default but chooses not to. Therefore, the FAA no longer compels us to dismiss or stay this case for arbitration").

The district court properly found that Myers was not required to provide a new consent (App. Vol. II at 102) and AAA made clear that it would not proceed without Myers renewed consent. (App. Vol. I at 258-259). *Roach v. BM Motoring, LLC*, 228 N.J. 163, 155 A3D 985 (2017). Arbitration agreements are contracts like any other and thus require consent. *Morgan.*, 596 U.S. at 418. Once a party defaults on that agreement, the defaulting party cannot judicially force the other party to essentially consent to new, second arbitration agreement.

Finally, Papa Texas's claim that AAA did not refuse to arbitrate (App. Br. at 29-30) is patently incorrect. AAA informed the parties that without Myers consent, it would not (and did not) proceed. (App. Vol. I at 258-259). Administrative closure and declining to proceed absent Myers consent is refusal to administer the arbitration. *Sink v. Aden Enters., Inc.*, 352 F.3d at 1201.

3. **Papa Texas Waived the "Old vs. New" Case Argument, and it Fails on the Merits.**

Papa Texas argues the Myers's later-filed lawsuit (case number 2:23-cv-01096-DHU-JHR), which he filed after agreeing to dismiss his initial lawsuit to pursue arbitration and after AAA closed the parties' arbitration case due to Papa Texas's non-compliance, is somehow a "new case" that was not submitted to AAA and that negates Papa Texas's breach. (App. Br. at 14-18). According to Papa Texas, the district court was wrong by finding that their violation of AAA's rules during the

pendency of his arbitration proceeding (which occurred prior to the 1096 filing) is a breach of contract that nullifies the agreement "forever and ever." (App. Br. at 16-17). Papa Texas claims that the district court should have considered the 1096 case in a vacuum, ignoring the case history and AAA's administrative closure, and "ordered Myers to provide whatever consent AAA required." (App. Br. at 16-17). This argument suffers several, independently fatal, flaws.

First, Papa Texas has forfeited the argument regarding the "old case vs. new case", as it was not raised in their opposition to Myers's motion to vacate (App. Vol. I at 288-298) or at the hearing (Doc. 32-4). *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) (holding that an argument raised for the first time on appeal is deemed forfeited if the theory simply wasn't raised before the district court). Even if preserved, however, it fails.

Second, Papa Texas's position that the claims asserted in the 1096 case are "new" claims directly contradicts their own argument in the district court. (App. Vol. II at 46). As Papa Texas's counsel described, the 1096 involves the same Plaintiff, who filed the same exact lawsuit, for the same allegations, the "same everything." (App. Vol. II at 46). Papa Texas cannot now point to a semantic change in a single allegation to claim that the 1096 lawsuit raises new claims.

20

Third, even if the 1096 case did raise new allegations or address new covered claims, it would not matter. Papa Texas's breach of the arbitration agreement does, in fact, invalidate the agreement "forever and ever." *Cahill*, 786 F.3d at 1294 ("Our holding is consistent with decisions of other courts that have determined a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement.") (citations omitted). Unless Myers chose to enter a new arbitration agreement, which he will not do, Papa Texas's failure to pay its fees was a material breach that precludes any subsequent attempt to enforce that agreement. *Id.*

Fourth, Papa Texas's argument defies logic and the purpose of arbitration. Under Papa Texas's logic, a party could perpetually breach an arbitration agreement by failing to pay its fees and, when the case is subsequently refiled, assert that those claims are a part of a new case that has not yet been compelled to arbitration pursuant to the same (breached) arbitration agreement. Such a result is wholly inconsistent with the supposedly speedy and summary procedures afforded to the parties in arbitration. *Garcia*, 2010 U.S. Dist. LEXIS 92869.

Finally, Papa Texas's "new case" argument ignores that arbitral forum they selected for all covered claims treats a failure to pay filing fees as a breach of contract. The district court correctly noted that AAA made clear that it would not reopen the

administratively-closed case without Myers's new consent. This finding is not clearly erroneous, as the record demonstrates that AAA has not, and will not, proceed with administration in light of Myers's lack of consent. (App. Vol. I at 258).

Like the defaulting party in *Cahill*, Papa Texas originally sought a stay of the district court proceedings to pursue arbitration but then failed to meet the AAA's fee requirements. Now, Papa Texas seeks to keep a stay in place for more arbitral proceedings on the same claims, which they "thwarted in the first place." As this Court explained in *Cahill*:

> [W]hen the purpose of arbitration—to provide a cost-effective and efficient means of resolving a claim—is thwarted by a party's default in failing to pay the required fees[,] the Court believes that the paying party's right to have its dispute adjudicated and not to be unreasonably held at the mercy of a nonpaying party outweighs the strong presumption in favor of arbitration.

*Cahill*, 786 F.3d at 1299, Fn 7 quoting *Brandifino v. CryptoMetrics, Inc.*, 27 Misc. 3d 513, 896 N.Y.S.2d 623, 630 (N.Y. Sup. Ct. 2010).

Here, the arbitration agreement covers "all covered claims" from the employment relationship (App. Vol. I at 101-103). Papa Texas argued this point in earlier briefing: "[E]ach of Plaintiff's and Putative Class's claims are "Covered Claims" as defined and agreed to in the Mutual Agreement to Arbitrate Claims." (App. Vol. I at 52). Myers attempted to arbitrate his covered claims pursuant to the parties' arbitration agreement, meeting his obligations and complying with the rules

of the forum.  (App. Vol. I at 142, 192-193). Papa Texas's non-payment of fees breached the agreement, precluding enforcement of the agreement for all covered claims. *Hernandez v. Acosta Tractors, Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018). The district court's finding that the 1096 case falls under the agreement is not clearly erroneous, as the parties did not even dispute this point. (App. Vol. I at 238). And the district court's conclusion that Papa Texas cannot enforce the agreement after its breach follows this Court's binding precedent in *Cahill*, 786 F.3d at 1293. Accordingly, the district court's decision should be affirmed.

4.    **Myers Did Not Waive His Default Argument**

Papa Texas did not preserve for appeal the argument that Myers waived his ability to argue default under 9 U.S.C. § 3 by previously arguing that Papa Texas waived the right to arbitrate. (App. Br. at 33-34). Even if preserved, however, the district court's ruling that Myers did not waive the right to argue default should be upheld.

A party preserves an issue for appeal when the party "alert[s] the district court to the issue and seek[s] a ruling—a party does not preserve an issue merely by presenting it to the district court in a vague and ambiguous manner, or by making a fleeting contention before the district court." *Albuquerque Pub. Sch. Bd. of Educ. v. Armstrong*, No. 22-2012, 2022 U.S. App. LEXIS 34153, at *11 (10th Cir. Dec. 12,

23

2022) (citation omitted). A party cannot preserve an argument for appeal by "rais[ing] [it] in the District Court in a perfunctory and underdeveloped manner." *Id.* citing *In re Rumsey Land Co.*, LLC, 944 F.3d 1259, 1271 (10th Cir. 2019) (quotation marks omitted).

Papa Texas raised the argument that Myers waived his ability to argue default spontaneously during oral argument, only after the district court disagreed with their argument that the waiver and default are the same thing. (App. Vol. II at 109-114). Papa Texas's waiver argument at the hearing was wholly underdeveloped, citing no case law supporting the proposition that Myers was foreclosed from arguing default or explaining how the argument could be waived when it was not previously clear that AAA would not administer the case absent Myers consent. (App. Vol. II at 109-124). Accordingly, Papa Texas's waiver argument was forfeited for purposes of this appeal.

The Tenth Circuit "will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Richison*, 634 F.3d at 1128. "If an appellant does not explain how its forfeited arguments survive the plain error standard, it effectively waives those arguments on appeal." *In re Rumsey Land Co.*, LLC, 944 F.3d at 1271; *see also Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1201 (10th Cir. 2021) ("When

the appellant fails to argue for plain error, we consider the theory waived and not entitled to review."); *Richison*, 634 F.3d at 1131 ("[F]ailure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court."). Here, Papa Texas does not explain how its forfeited arguments survive the plain error standard, thereby waiving that argument on appeal.

Even if Papa Texas's waiver argument is preserved, it fails for several reasons. First, as the district court acknowledged, Myers's default argument was raised through motion, Papa Texas had an opportunity to respond, and the issue was fully briefed. (App. Vol. II at 135).

Second, when Myers argued waiver, it was not yet clear whether AAA would accept administration of the case because AAA stated it "may" decline future cases (App. Vol. I at 197, 249; App. Vol. II at 111). Although Myers ostensibly could have raised the default argument earlier, waiting to raise the argument once AAA had clearly communicated that it would not administer the case was a pragmatical response to the circumstances of the case. Moreover, it was in the context of doing what the district court asked—find out if AAA would administer the case. (App. Vol. I at 249). AAA would not. (App. Vol. I at 258). Thus, Myers's motion to vacate the

stay informed the district court of the AAA's disposition and what should happen next. Myers did exactly what he should have done to raise the issue.

Finally, as the district court explained, the concepts of waiver and default are distinct. (App. Vol. II at 110-112). Though closely related, waiver and default are not identical under the FAA. *Cahill*, 786 F.3d at 1295 FN3. When the district court considered whether Papa Texas waived arbitration, it considered the factors outlined in *Peterson v. Shearson/American Express, Inc.*, 849 F.2d at 466, including Papa Texas's subjective intent. (; App. Vol. I at 240-244; App. Vol. II at 110-113). When considering default, on the other hand, the district court looked to whether the arbitration had been had in accordance with the parties' agreement and whether Papa Texas was in default in proceeding with such arbitration. *Cahill*, 786 F.3d at 1293-395; (App. Vol. II at 110-112, 134-137). Under the default analysis, Papa Texas's alleged belief in settlement does not negate the consequences of non-compliance. Thus, Papa Texas cannot show that Myers intentionally relinquished his right to argue default by waiting to raise it once it was clear that AAA would not administer his claims, and the district court's ruling that Myers did not waive his default argument by previously arguing waiver should be affirmed.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

26

Respectfully submitted,

*/s/ Emily Hubbard*

ANDY BILLER
BILLER & KIMBLE LLC
4200 Regent Street
Columbus, OH 43219
(614) 604-8759
*abiller@billerkimble.com*

ANDREW KIMBLE
LAURA FARMWALD
EMILY HUBBARD
BILLER & KIMBLE LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
(513) 715-8712
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

August 18, 2025                    *Counsel for Plaintiff-Appellee*

## STATEMENT AS TO ORAL ARGUMENT

Pursuant to Fed. R. App. Pro. 34(a)(2)(B) and (C), Myers submits that oral argument is unnecessary because the dispositive issue—whether a party's failure to pay its arbitration fees constitutes a default under 9 U.S.C. § 3 when it causes arbitration's closure and renders the forum unavailable—has been authoritatively decided by this Court in *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015), *cert denied, Cahill v. Pre-Paid Legal Servs.*, 577 U.S. 940 (2015) and the facts and legal arguments are adequately presented in the briefs and record.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,093 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Equity Text font.

> */s/ Emily Hubbard*
> Emily Hubbard
> BILLER & KIMBLE LLC
> 8044 Montgomery Road, Suite 515
> Cincinnati, OH 45236
> (513) 202-0710
> *ehubbard@billerkimble.com*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Sixth Circuit by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

*/s/ Emily Hubbard*
Emily Hubbard